IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA STRAUB<br><br>v.<br><br>CBS BROADCASTING, INC. | CIVIL ACTION<br><br>NO. 14-5634 |

MEMORANDUM RE DEFENDANT'S MOTION FOR RECONSIDERATION

Baylson, J.                                                                                                              April 25, 2016

## I.  Introduction

In this defamation, false light, and intentional infliction of emotional distress case, Defendant CBS Broadcasting has moved this Court to either reconsider its March 11, 2016 decision denying Defendant's motion for summary judgment or certify that ruling for interlocutory review pursuant to 28 U.S.C. § 1292(b).  ECF 59-1.  Familiarity with the Court's prior Opinion (ECF 52) is presumed.  For the reasons that follow, Defendant's Motion is denied, recognizing that the Court has not ruled on the merits, but only on a motion for summary judgment.

## II.  Standards for a Motion for Reconsideration

Disagreement with the outcome of this Court's opinion is not the proper basis for a motion for reconsideration.  See Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)). Instead, "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Id.

1

Defendant has not argued either of the first two bases.  Instead, Defendant contends that:

1. The Court committed clear error when it held that Defendant's assertion that it possessed certain exclusive surveillance video is not protected by the fair report privilege;

2. The Court erred in holding that there are genuine issues of material fact as to what Officer Joanne Pepitone said at the Lower Merion Police Department ("LMPD") press briefing;

3. The Court did not follow binding precedent in evaluating whether there is sufficient evidence of actual malice to allow Plaintiff's false light claim to proceed; and

4. The Court should have dismissed the intentional infliction of emotional distress claim.

Because Defendant's Motion amounts to nothing more than disagreement with how the Court ruled, it could be denied on that basis alone.  Nevertheless, the Court will address each of Defendant's contentions below.[1]

---

[1] The Court also pauses here to clarify Defendant's misinterpretation of its prior Opinion, in which the Court stated, "Hunter testified that Welsch told Hunter on June 26 that Welsch had video of someone leaving a dead snake and mice in Ms. Martell's driveway and that this video had already been given to the police. ECF 31-3 Def. Ex. 11 (Feb. 3, 2015 Hunter Dep.) at 22:14-18. Defendant concedes that both of these statements were false." ECF 52 at 3.  This statement deals with two representations Welsch made to Defendant's reporter Walt Hunter before the broadcast, not the contents of Defendant's broadcast.  Defendant has already conceded in response to Plaintiff's Statement of Facts that these representations by Welsch to Hunter were false.  ECF 40-2 and 43-1 ¶¶ 4-6, 18.

### III. The Court Correctly Held that the Fair Report Privilege Does Not Protect the Lead-In to Defendant's 5 p.m. and 6 p.m. June 26, 2013 Broadcasts

As the Court previously held:

> A jury could find that the 5 p.m. June 26, 2013 broadcast implied that CBS had exclusive footage of both Jonathan Straub and Plaintiff (the 'perpetrators') engaged 'in the act' of placing 'dead mice and a dead snake thrown in the front lawn of a Main Line home.' A jury could similarly interpret the 6 p.m. broadcast to state that Defendant had video of 'some Main Line real estate agents' (clarified in the broadcast as Plaintiff and Jonathan Straub) 'using some underhanded tactics; dead mice, even a dead snake.'

ECF 52 at 8.[2] Defendant argues that the fair report privilege applies to these statements because they refer "to material, including the surveillance video, that was at the heart of the charges brought against plaintiff and her husband." ECF 59-1 at 4.[3]

A jury could interpret Defendant's broadcast to state that Defendant claimed to possess a video of Plaintiff. Whether true or false, that assertion would not be a report of the LMPD press briefing or the citations issued against the Straubs, even if the LMPD claimed to have that exact same video.[4] A jury may conclude it is an independent statement of purported fact. Summary judgment cannot be granted based on a claim of the fair report privilege that attaches to an assertion that Defendant possesses video because Defendant is not quoting the LMPD.

---

[2] Plaintiff correctly points out that at least a portion of Defendant's Motion mischaracterizes the Court's Opinion. ECF 62-1 at 4. Specifically, while Defendant argues that the Court held that the video in question is not a report of an official proceeding, ECF 59-1 at 1, the Court actually held (and continues to hold) that Defendant's claim to possess the video is not a report of an official proceeding.

[3] While Defendant correctly notes that Welsch's handwritten statement states, "we have them on tape," ECF 31-2 Def. Ex. 1 at LMPD0019, that statement is irrelevant for purposes of the fair report privilege inquiry. Officer Pepitone testified that when she gave her press briefing, she did not have access to Welsch's statement. ECF 31-3 Def. Ex. 10 (Apr. 20, 2015 Pepitone Dep.) at 61:15-62:1. All she had access to was Officer Rigby's initial report, which is ECF 31-2 Def. Ex. 1 at LMPD 0011. ECF 31-3 Def. Ex. 10 (Apr. 20, 2015 Pepitone Dep.) at 7:18-24.

[4] The Court similarly did not err in stating that "the incident report does not mention that police had seen any of Welsch's videos." ECF 52 at 8. The report states that Officer Tami Rigby told Plaintiff that Rigby had seen the video; nowhere in the report does Rigby mention having actually viewed it. As per Defendant's Statement of Undisputed Material Facts, Rigby had in fact not seen any video at that time and only said she had to gauge Plaintiff's reaction (a common police tactic). ECF 30-2 ¶ 24.

**IV. Defendant Mischaracterizes Officer Pepitone's Deposition**

Defendant claims that "it is indisputably a fact that [Officer Pepitone] stated to the press" that the Straubs were "'caught on tape' dumping vermin." ECF 59-1 at 7. In at least four instances, Officer Pepitone arguably testified to the contrary during her April 2015 deposition, ECF 31-3 Def. Ex. 10 (Apr. 20, 2015 Pepitone Dep.) at 28:8-16; 36:4-19; 59:11-60:1; 64:10-65:1, and she further testified numerous times to general haziness of her recollections, id. at 9:4-13; 21:16-20; 24:23-25:4; 39:7-15; 46:19-47:6; 67:20-68:2. The court cannot grant summary judgment on this issue on this record.[5]

**V. Defendant's Argument Regarding Actual Malice Fails**

The Court will not readdress much of Defendant's argument on this point because it is adequately addressed in the prior Opinion. Two issues merit brief discussion.

First, Defendant is correct in arguing that "failure to investigate will not alone support a finding of actual malice." Harte-Hanks Commc'n, Inc. v. Connaughton, 491 U.S. 657, 692 (1989). Defendant neglects to mention, however, that "the purposeful avoidance of the truth is in a different category." Id. Viewing the evidence in the light most favorable to Plaintiff, this Court cannot rule as a matter of law that Defendant did not purposefully avoid the truth in running its broadcasts. Numerous questions of fact remain.[6]

Second, Defendant mischaracterizes the Court's Opinion in arguing that the Court determined "that this allegedly defamatory assertion is actually an implication." ECF 65 at 3. The Court instead was commenting on how a jury could interpret the statement for purposes of

---

[5] The Court's holding does not, as Defendant contends, make "it virtually impossible to obtain summary judgment in cases where there is no recorded version of an official oral statement." ECF 59-1 at 8. Summary judgment is simply inappropriate in a case like this one, where the speaker herself has equivocated under oath as to what was said.

[6] Defendant is also wrong in claiming that "there is no evidence that [Officer Pepitone] told [Hunter] that anything in particular in the Patch article was false." ECF 59-1 at 13. Pepitone testified at her deposition that she told Hunter she was misquoted and that Hunter did not ask her what she meant. ECF 31-3 Def. Ex. 10 (Apr. 20, 2015 Pepitone Dep.) at 13:22-14:17; 15:10-18:16; 24:3-22; 40:5-13.

deciding if it is true or false; under either Plaintiff's or Defendant's construction, it would be an assertion of potentially defamatory fact as Plaintiff correctly notes at ECF 62-1 pp. 22-23, not a case of defamation by implication. There is no basis for applying the actual malice in defamation-by-implication cases standard in Kendall v. Daily News Publishing Company, 716 F.3d 82, 90 (3d Cir. 2013) to this case.

## VI. The Intentional Infliction of Emotional Distress Claim Survives

Defendant claims that "the Court has found no basis for plaintiff's claim of intentional infliction of emotional distress." ECF 59-1 at 3. The Court stated that it was "extremely dubious" of that claim, ECF 52 at 19, not that the claim was meritless.

An en banc ruling from the Third Circuit held that the knowing dissemination of falsehoods about a plaintiff can support a claim for intentional infliction of emotional distress under Pennsylvania law – even when that behavior does not constitute defamation. Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir. 1979) ("[I]f Dr. Nixon advised sportswriter Brown that Chuy suffered from polycythemia vera, knowing that Chuy did not have the disease, such conduct could reasonably be regarded as extreme and outrageous."). The Pennsylvania Supreme Court cited Chuy with approval in Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). Chuy is also consistent with more recent authority from outside this Circuit holding that an intentional infliction of emotional distress claim can be predicated on defamation. E.g., Hatfill v. N.Y. Times Co., 416 F.3d 320, 336 (4th Cir. 2005) (emphasis and alteration in original) ("The district court's conclusion that '[p]ublishing news or commentary on matters of public concern' can never be sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress sweeps too broadly.").

It remains an open issue for trial if Plaintiff can prove that her case is on point with Chuy.

**VII.     The Court Declines Defendant's Request for Section 1292(b) Certification**

"[A] non-final order may only be certified for interlocutory appeal if the court determines it: (1) involves a controlling question of law, (2) for which there is substantial ground for difference of opinion, and (3) which may materially advance the ultimate termination of the litigation if appealed immediately." J.B. ex rel. Benjamin v. Fassnacht, 801 F.3d 336, 339 n.8 (3d Cir. 2015) (citations omitted).  "[E]ven if the district judge certifies the order under § 1292(b), the appellant still has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (citations omitted).

None of Defendant's proposed issues involve a controlling question of law.  Furthermore, an interlocutory appeal would not materially advance the litigation.  It would instead be preferable to have the trial in this matter, currently scheduled for approximately eight weeks from now, rather than delay this case indeterminately for a partial appeal with a possibility of trial in a year or more.  Witness's memories fade, and many of Defendant's arguments may become moot if Defendant prevails.

**VIII.    Conclusion**

Defendant's current Motion does not justify reconsideration or an interlocutory appeal.  Accordingly, Defendant's Motion shall be denied.  An appropriate Order follows.[7]

O:\CIVIL 14\14-5634 straub v. cbs broadcasting\14cv5634 MTR Opinion.docx

---

[7] Defendant points out that the question of whether the allegedly defamatory broadcasts were matters of public concern was not ripe for review on summary judgment. ECF 59-1 at 15 n.12. The Court agrees, though it is still skeptical that this dispute between neighbors would qualify. Despite denial of the Motion for Reconsideration, Defendant shall not be precluded from raising this issue in advance of or during trial as appropriate.