IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA STRAUB<br><br>    v.<br><br>CBS BROADCASTING, INC. | CIVIL ACTION<br><br>NO. 14-5634 |

MEMORANDUM RE DEFENDANT'S MOTIONS IN LIMINE

Baylson, J.                                                                                                     May 23, 2016

I.  Introduction

Plaintiff Andrea Straub has sued Defendant CBS Broadcasting for defamation, false light, and intentional infliction of emotional distress.  Prior opinions of this Court discuss the facts of this matter in greater detail.  See ECF 52, 66.  Defendant has filed five motions in limine.  This Memorandum will constitute preliminary rulings on the motions, and will note where definitive rulings may not be possible until trial begins.

II. MIL #1 (ECF 68/78): Preclude Expert Testimony Regarding Actual Malice

Plaintiff has offered Christopher Harper as a journalism expert.  ECF 41-4 Pl. Ex. 7 (Harper report).  Defendant seeks to preclude Mr. Harper from opining that Defendant acted with actual malice in running the challenged broadcasts.

"Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that embraces an ultimate issue to be decided by the trier of fact, an expert witness is prohibited from rendering a legal opinion. Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (citations omitted).

1

In this case, Mr. Harper may not define "actual malice" for the jury or offer an opinion as to whether Defendant's conduct meets that threshold because whether Defendant acted with actual malice is a legal conclusion.  See Franklin Prescriptions, Inc. v. N.Y. Times Co., Civil Action No. 01-145, 2004 WL 6035282, at *1 (E.D. Pa. Mar. 9, 2004).  Mr. Harper may, however, offer his expert opinion and the bases thereof regarding whether Defendant abided by generally accepted newsroom practices in running its broadcasts.

### III. MIL #2 (ECF 69/75): Request to Allow the Jury to View the Challenged News Reports and to Instruct the Jury on Applicable Law Before Opening Statements

The parties have agreed in principle that the jury should be pre-instructed prior to opening statements on the applicable law in this case.  ECF 75 at 1.  While amenable to the idea, the Court reserves judgment on this issue until such time as the parties jointly agree to language.  If they cannot come to an agreement, the pre-instruction will be very general as to the nature of the case, the jury's function, and the credibility of witnesses.

Defendant cites no case law, however, for the proposition that the jury should view the challenged news reports prior to hearing opening statements, and Plaintiff objects to this suggestion.  The Court declines to use this procedure.

### IV. MIL #3 (ECF 70/76/82): Preclude Certain Alleged Hearsay Evidence

The Court reserves judgment of this Motion for trial, as the current record is insufficiently clear as to for what purpose Plaintiff intends to offer the disputed evidence.

### V. MIL #4 (ECF 71/79): Preclude Guidelines of Other News Organizations

The Court similarly reserves judgment on this Motion pending supplemental briefing from the parties as outlined in the accompanying Order.

**VI. MIL #5 (ECF 72/77/81): Treat Plaintiff as a Limited Purpose Public Figure**

Defendant argues that Plaintiff is a limited purpose public figure with respect to the content of Defendant's broadcasts, and that she must accordingly prove that Defendant acted with actual malice (i.e., knowledge of or reckless disregard for their alleged falsity) to prevail on a claim for defamation. ECF 72 at 2-3. Defendant's argument fails, and Plaintiff accordingly need only prove that Defendant was negligent in order to win at trial. U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 923 (3d Cir. 1990) ("[I]n order to recover damages, the plaintiff must demonstrate that the statement results from fault, amounting at least to negligence, on the part of the defendant.").

"[L]imited purpose public figures [are] individuals who voluntarily thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Id. at 938 (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974)). "Traditionally, a plaintiff could only be considered a limited-purpose public figure relative to a pre-existing controversy in which he elected to participate. More recently, however, some courts have held that a controversy may be created by a plaintiff's own activities, particularly with respect to widespread public solicitation and advertisements." Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa., 923 A.2d 389, 401-02 (Pa. 2007). A determination of whether Plaintiff is a limited purpose public figure entails examination of two questions: 1) do the contents of Defendant's broadcasts relate to a "public controversy," and 2) if so, what was "the nature and extent" of Plaintiff's participation. See McDowell v. Paiewonsky, 769 F.2d 942, 948 (3d Cir. 1985) (citing Marcone v. Penthouse Int'l Magazine For Men, 754 F.2d 1072, 1082 (3d Cir. 1985)).

"Mere newsworthiness . . . is not sufficient to create a public controversy. [Rather,] a public controversy must be a real dispute, the outcome of which affects the general public or some segment of it. To be public, the dispute must affect more than its immediate participants." Marcone, 754 F.2d at 1083 (citations omitted).

The Court cannot conclude that the broadcasts at issue here concerned matters of public controversy. The dispute Defendant reported on was, in essence, a feud between neighbors.[1] Plaintiff and her husband were charged with two summary offenses, see 18 Pa. Cons. Stat. § 5503(a)(4) (2016) (disorderly conduct) and 18 Pa. Cons. Stat. § 2709(a)(3) (2016) (harassment), which under Pennsylvania law are "by definition, minor offenses, punishable most often, only by fine." Commonwealth v. Koch, 431 A.2d 1052, 1054 (Pa. Super. Ct. 1981). The Supreme Court has flatly rejected the proposition that "any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction," Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 168 (1979), and at least one court in Pennsylvania held that charges for the far more serious felony of homicide did not constitute a "public controversy." Tyus v. Tridune-Review Publ. Co., No. 7213 of 2001, 2006 Pa. Dist. & Cnty. Dec. LEXIS 73, at *2 (Ct. Common Pleas Westmoreland Cty. May 23, 2006) ("Nor does the fact that he was charged with a felony elevate him to public status."). While in certain circumstances criminal allegations constitute a public controversy, see Marcone, 754 F.2d at 1083 ("Drug trafficking of such mammoth proportions, which is one of the

---

[1] Smith v. A Pocono Country Place Property Owners Association, 686 F. Supp. 1053, 1058 (M.D. Pa. 1987) is not to the contrary. In that case, a dispute over the membership of a homeowners association qualified as a "public controversy" because it was "a public dispute of concern to residents of the local community, especially members of the Association" who would be governed by one set of members or the other. Id. In this case, by contrast, no one other than the Straubs and their neighbor could have been impacted by the result of the citations for disorderly conduct and harassment.

4

most troubling issues of our time, surely falls within the ambit of public controversy."), the citations issued against the Straubs in this case do not.

Moreover, even assuming that Plaintiff's dispute with her neighbor and the resulting police citation qualify as a public controversy, "nothing in the record suggests that [Plaintiff] took any action to inject herself further into the controversy after it flared up." Weber v. Lancaster Newspapers, Inc., 878 A.2d 63, 77 (Pa. Super. Ct. 2005). Plaintiff's off-the-record phone call with reporter Walt Hunter between the 5 p.m. and 6 p.m. broadcasts does not rise to the level of engagement necessary to turn Plaintiff into a limited purpose public figure. See Time, Inc. v. Firestone, 424 U.S. 448, 454 n.3 (1976) ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceedings in an attempt to satisfy inquiring reporters converts her into a 'public figure.'"); Iafrate v. Hadesty, 621 A.2d 1005, 1008 (Pa. Super. Ct. 1993) ("By speaking with the Call's reporter, Iafrate did not thrust himself into a public controversy or make himself a public figure. Any other result would make public figures of all persons requested by the media to answer inquiries or make statements on matters deemed newsworthy by the media."). Defendant misconstrues the inquiry by focusing on actions Plaintiff allegedly took against her neighbor, such as moving a for-sale sign, when the inquiry is whether Plaintiff voluntarily engaged with the media to influence coverage of the dispute. See Wolston, 443 U.S. at 168 (finding that a failure to appear before a grand jury and subsequent citation for contempt did not make the plaintiff a public figure because those actions "were in no way calculated to draw attention to [the plaintiff] in order to invite public comment or influence the public with respect to any issue. He did not in any way seek to arouse public sentiment in his favor and against the investigation."); Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1079 (3d Cir. 1988) ("Schiavone thrust himself into the controversy surrounding Donovan and his

company by letter campaigns and his active investigation into the private lives of the committee members investigating Donovan.").[2]

Defendant also emphasizes Plaintiff's purported visibility in the community, including the fact that Plaintiff was a prominent realtor with a website and the fact that she was a board member of the Haverford Civic Association. ECF 72 at 4-6. Defendant, however, has specifically disclaimed any argument that Plaintiff was an all-purpose public figure. ECF 72 at 3 n.1; ECF 81 at 1. Accordingly, these facts do not bear on whether actual malice should be applied here. See Medure v. Vindicator Printing Co., 273 F. Supp. 2d 588, 611 (W.D. Pa. 2002) ("Defendants also cite other examples of Medure's 'prominence' in Western Pennsylvania, [but] [n]one of these issues has any bearing on [the subject of the defamatory broadcast]. Therefore, they are not relevant to the determination of whether he is a limited purpose public figure.").[3] Moreover, the Court rejects the assertion that Plaintiff enjoys significantly greater access to the channels of effective communication than ordinary citizens per Gertz. See, e.g., Scott v. Lackey, Civil Action No. 1:02-CV-1586, 2012 WL 1933246, at *4 (M.D. Pa. May 29, 2012) (rejecting assertion that Plaintiff was a limited public figure for joining an actor's fan website).

---

[2] Mzamane v. Winfrey, 693 F. Supp. 2d 442 (E.D. Pa. 2010) is not to the contrary. In Mzamane, the court held that the inevitable publicity that would accompany the position of headmistress at "a school that was envisioned as being unique and innovative with respect to the educational system in South Africa, and which was associated with an enormously high-profile celebrity figurehead [Oprah Winfrey]" meant that the plaintiff, by accepting the position, "thrusted herself into the vortex of some public prominence" despite the fact that her job did not include media relations. Id. at 502. In this case, by contrast, there is nothing about Plaintiff's alleged argument with her neighbor and moving a for-sale sign (see ECF 81 at 4-5) that would inevitably lead to the conclusion that Plaintiff would be subject to media scrutiny. Absent such inevitability, Plaintiff would need to affirmatively engage with the media in an effort to influence the controversy to be deemed a public figure. This, she has not done.

[3] Defendant's citation to Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264, 274 (3d Cir. 1980) is unavailing, as in that case the defendant's direct engagement with the media in the form of a $16,000 advertising blitz led the court to hold that the plaintiff was a public figure because the alleged defamation pertained to the products the campaign was advertising. Plaintiff's purported use of channels of communication in her capacity as a realtor does not relate to the subject of Defendant's broadcasts.

**VII.   Conclusion**

For the reasons stated above:

- Defense Motion in Limine #1, seeking to preclude Plaintiff's journalism expert Christopher Harper from opining on actual malice, is granted (without prejudice to the rest of Mr. Harper's testimony) because "actual malice" is a legal conclusion;

- Defense Motion in Limine #2, seeking pre-instruction of the jury, is held pending the submission of agreed-upon instructions;

- Defense Motion in Limine #3, seeking the exclusion of purported hearsay evidence, is held pending an offer of proof at trial;

- Defense Motion in Limine #4, seeking to preclude Mr. Harper from commenting on guidelines from the Society of Professional Journalists and the Radio Television Digital News Association, is held under advisement pending supplemental briefing; and

- Defense Motion in Limine #5, seeking a declaration that Plaintiff is a public figure, is denied.  The subject of Defendant's broadcast does not relate to a "public controversy," and even if it did, Plaintiff did not voluntarily thrust herself into the public eye in order to influence the resolution of the issues involved.

An appropriate Order follows.

O:\CIVIL 14\14-5634 straub v. cbs broadcasting\14cv5634 MIL Opinion.docx